PER CURIAM.
We have for review a final order of dissolution. The trial court awarded Kimi Lea Cox (wife) no portion of the military retirement of James H. Cox, Jr. (husband). The wife’s entitlement to a portion of the military retirement is the only issue on appeal. We reverse.
The Coxes were married in August 1978, when the husband was in the military reserves. The husband went on Air Force active duty in 1979, and has remained on active duty; he at present holds the rank of major. Four children were born of the marriage. The parties divorced in March 1988 in Guam.[1] The parties entered into a settlement agreement (the Guam agreement), in which the parties were “represented” by one lawyer. The parties resumed living together in August 1989; they remarried in November 1989, in Apalachicola, Florida. They separated in December 1990, before the instant dissolution.
It is undisputed that the Coxes genuinely reconciled, and remarried, following the Guam divorce. The husband testified, regarding the Guam agreement, that their Guam lawyer told them it would be less expensive to have one lawyer, and that he gave them forms to execute regarding their property. The lawyer advised the Coxes that they had to decide who was to be the petitioner; the wife decided to be the petitioner. The divorce was uneontested, and was granted in a week. The Guam agreement contains a detailed list of the Coxes’ property, under the headings “community property” and “separate properties”; the agreement contains no mention of the husband’s retirement under either heading.
The husband earned a masters degree during the marriage. The wife had a high school education; she occasionally worked part-time during the marriage. The wife moved each time her husband’s career required it — a total of six times. After the Guam divorce the wife earned an A.A. degree and worked in her father’s store. The wife testified that the husband handled the finances during the marriage. She first learned the amount of her husband’s income after she consulted a lawyer at the base legal office, after the separation preceding the instant dissolution. The wife also testified that, at the time of the Guam divorce, she had no knowledge that she was entitled to a portion of the husband’s military retirement.
The wife argues that, as a matter of law, the Guam agreement must be set aside. We disagree with the wife’s reading of this court’s prior cases. This court first addressed the question of whether a marital agreement ought to be set aside after reconciliation in Mills v. Mills, 460 So.2d 545 (Fla. 1st DCA 1984). We held that “under the particular circumstances of [the] case” a postnuptial settlement agreement was abrogated by reconciliation and a subsequent six-year cohabitation. Id. at 546. We stated: “We do not conclude that, as a matter of law, *588 reconciliation abrogates all settlement agreements.” Id.
We also addressed the question whether a remarriage of the parties serves to abrogate a prior agreement in Thomas v. Thomas, 571 So.2d 499 (Fla. 1st DCA 1990). We concluded that “the trial court abused its discretion in failing to set aside the prior property settlement agreement, for purposes of an equitable distribution of the marital assets in this case.” Id. at 506 (emphasis added). We found “an abuse of discretion in the trial court’s determination that the dissolution of marriage should be considered a three-year marriage for purposes of the division of property and consideration of an award of alimony to the wife [in view of the prior thirty-year marriage of the parties].” Id. at 507.
Professor Clark, in his treatise on the law of domestic relations, notes that the effect of reconciliation on separation agreements is a “difficult question,” resulting in several lines of cases. Homer H. Clark, Jr., The Law of Domestic Relations § 19.7, at 438 (2nd ed. 1987) [hereinafter Clark ]. One line of cases holds that the intention of the parties governs. See Gerard v. Gerard, 636 So.2d 849 (Fla. 1st DCA 1994) (holding that there was competent substantial evidence to support the conclusion that the parties intended to void the marital settlement agreement and a deed when they reconciled). Another line holds that reconciliation voids a separation agreement but not a property settlement — an approach Clark disparages, because he views such a distinction as “specious.” Clark, supra, at 439. Another line of cases holds that reconciliation abrogates the executory portions of the separation agreement but does not affect the executed portions. Id. There is authority for this view in Florida. See Miller v. West Palm Beach Atlantic Nat’l Bank, 142 Fla. 22, 194 So. 230, 231 (1940) (holding that where husband conveyed property to wife as part of a separation agreement and the husband and wife reconciled a few months later, wife’s devise of that property ten years later was not voided by the reconciliation; this case is distinguished in Gerard). Other cases hold that the agreement is void. Weeks v. Weeks, 143 Fla. 686, 691, 197 So. 393, 395 (1940) (“It appears to be well settled that reconciliation of husband and wife and resumption of marital relations for any period of time will render a previous contract and settlement of property rights void.”); see also Delgado v. Cotta de Lopez, 546 So.2d 1075 (Fla. 3d DCA 1989); Gosline v. Gosline, 435 So.2d 413 (Fla. 5th DCA 1983); Hudson v. Fatolitis, 289 So.2d 41 (Fla. 2d DCA 1974).[2] Professor Clark suggests that the agreement should be valid, unless adherence to the agreement would be unconscionable. Clark, supra, at 440. There is authority for this view too in Florida. Cf. Casto v. Casto, 508 So.2d 330 (Fla.1987) (holding a postnuptial agreement invalid because it was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching; reconciliation was not involved). We find that the approach taken in Mills and Thomas — abuse of discretion — accords with the precept of Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), and we employ it here, rather than employing a strict rule that reconciliation or remarriage voids a property settlement or separation agreement. We find this approach consonant with the “competent, substantial evidence” language in Gerard.
We nevertheless agree with the wife that, on the instant facts, the trial court abused its discretion in failing to void the Guam agreement, Thomas; Mills, and in failing to award to her any portion of the husband’s military retirement. Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla.1986); Deloach v. Deloach, *589 552 So.2d 324 (Fla. 1st DCA 1989). We certify the following question to the Florida Supreme Court as one of great public importance:
Does reconciliation or remarriage void a property settlement agreement or separation agreement as a matter of law?
We reverse and remand for consistent proceedings, and certify the question.
It is so ordered.
SMITH, BARFIELD and LAWRENCE, JJ., concur.

. The husband was stationed on the western-Pacific island at the time.

. See also Sally B. Sharp, Divorce and the Third Party: Spousal Support, Private Agreements, and the State, 59 N.C.L.Rev. 819, 838-39 (1981) (citation and footnotes omitted):
One of the more interesting examples of the tension that may be produced by competing state policies is reflected in the rules regarding the effect of reconciliation between the parties on an executory separation agreement. The general rule, from which there is no dissent, is that 'voluntary resumption of cohabitation ... terminates all executory provisions in a bargain for separation.’ The policies that underlie this rule are also relatively clear. Once a reconciliation has occurred, the essential ingredients of the marriage relationship may be in no way controlled or affected by private contract. Of course, it is also a major policy of all states to encourage reconciliations.